Prepared By Heidi Jones
Wells Fargo Bank, N A
1000 Blue Gentian Rd
Eagan MN 55121

Return To Real Advantage, LLC
1000 Commerce Dr Ste 420
Pittsburgh, PA 15275

```
CFN 2009R0089799
OR Bk 26744 Pss 2599 - 2607, (9pss)
RECORDED 02/06/2009 15 16 31
MTG DOC TAX 785 05
INTANG TAX 448 50
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
```

[Space Above This Line For Recording Data]

State of Florida        FHA Case No

## ADJUSTABLE RATE
## HOME EQUITY CONVERSION MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on  01/26/09  The grantor is  CLEVELAND HART, A SINGLE PERSON

whose address is  1641 NW 155 STREET, MIAMI GARDENS, FL  33054

("Borrower") This Security Instrument is given to WELLS FARGO BANK, N A

which is organized and existing under the laws THE UNITED STATES and whose address is
P O BOX 11701

NEWARK, NJ  071014701                                    ("Lender")  Borrower has agreed to repay to Lender amounts which Lender is obligated to advance including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement")  The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ( Note")  This Security Instrument secures to Lender (a) the repayment of the debt evidenced by the Note with interest at a rate subject to adjustment, and all renewals extensions and modifications of the Note up to a maximum amount of  TWO HUNDRED TWENTY FOUR THOUSAND TWO HUNDRED FIFTY AND 00/100

(U S $           224250 00 ) (b) the payment of all other sums with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note  The full debt, including amounts described in (a)  (b)  and  (c)  above  if  not  paid  earlier  is  due  and  payable  on JANUARY 28TH , 2090         For this purpose Borrower does hereby mortgage, grant and convey to Lender the following described property located in   MIAMI-DADE County Florida



Page 1

*C·H*



EXHIBIT D

SEE ATTACHED LEGAL DESCRIPTION

which has the address of     **1641 NW 155 STREET**
[Street]
**MIAMI GARDENS, FL  33054**
[City State Zip]
("Property Address")

    TOGETHER WITH all the improvements now or hereafter erected on the property and all easements rights appurtenances, and fixtures now or hereafter a part of the property All replacements and additions shall also be covered by this Security Instrument All of the foregoing is referred to in this Security Instrument as the "Property"

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage grant and convey the Property and that the Property is unencumbered Borrower warrants and will defend generally the title to the Property against all claims and demands subject to any encumbrances of record

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

    UNIFORM COVENANTS Borrower and Lender covenant and agree as follows

    **1 Payment of Principal and Interest.** Borrower shall pay when due the principal of and interest on the debt evidenced by the Note

    **2 Payment of Property Charges** Borrower shall pay all property charges consisting of taxes ground rents flood and hazard insurance premiums and special assessments in a timely manner and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement

    **3 Fire, Flood and Other Hazard Insurance** Borrower shall insure all improvements on the Property whether now in existence or subsequently erected, against any hazards casualties and contingencies, including fire This insurance shall be maintained in the amounts to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary") Borrower shall also insure all improvements on the Property whether now in existence or subsequently erected against loss by floods to the extent required by the Secretary All insurance shall be carried with companies approved by Lender The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of and in a form acceptable to Lender

    In the event of loss Borrower shall give Lender immediate notice by mail Lender may make proof of loss if not made promptly by Borrower Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and to Lender jointly Insurance proceeds shall be applied to restoration or repair of the damaged Property if the restoration or repair is economically feasible and Lender's security is not lessened If the restoration or repair is not economically feasible or Lender's security would be

*C.H.*

lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness all right title and interest of Borrower in and to insurance policies in force shall pass to the purchaser

**4  Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application, Leaseholds** Borrower shall occupy establish, and use the Property as Borrowers principal residence after the execution of this Security Instrument and Borrower (or at least one Borrower if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement

Borrower shall not commit waste or destroy damage or substantially change the Property or allow the Property to deteriorate reasonable wear and tear excepted Borrower shall also be in default if Borrower during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note including but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence If this Security Instrument is on a leasehold Borrower shall comply with the provisions of the lease If Borrower acquires fee title to the Property the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing

**5  Charges to Borrower and Protection of Lender's Rights in the Property** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2 Borrower shall pay these obligations on time directly to the entity which is owed the payment If failure to pay would adversely affect Lender's interest in the Property upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c)

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy for condemnation or to enforce laws or regulations) then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property including payment of taxes, hazard insurance and other items mentioned in Paragraph 2

To protect Lender's security in the Property Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument

**6  Inspection** Lender or its agent may enter on inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower

**7  Condemnation** The proceeds of any award or claim for damages, direct or consequential in connection with any condemnation or other taking of any part of the Property or for conveyance in place of condemnation shall be paid to Lender The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument Any excess proceeds over an amount required to pay all outstanding Indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto

Page 3

*C.H.*

8  **Fees** Lender may collect fees and charges authorized by the Secretary

9  **Grounds for Acceleration of Debt.**

(a) **Due and Payable** Lender may require immediate payment in full of all sums secured by this Security Instrument if

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower  or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property)

(b) **Due and Payable with Secretary Approval** Lender may require immediate payment in full of all sums secured by this Security Instrument  upon approval of the Secretary  if

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower  or

(ii) For a period of longer than twelve (12) consecutive months  a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower  or

(iii) An obligation of the Borrower under this Security Instrument is not performed

(c) **Notice to Lender** Borrower shall notify Lender whenever any of the events listed in this Paragraph (a) (ii) or (b) occur

(d) **Notice to Secretary and Borrower** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a) (ii) or (b)  Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either

(i) Correct the matter which resulted in the Security Instrument coming due and payable  or

(ii) Pay the balance in full, or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance, or

(iv) Provide the Lender with a deed in lieu of foreclosure

(e) **Trusts** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower  shall not be considered a conveyance for purposes of this Paragraph 9  A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9

(f) **Mortgage Not Insured** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within **SIXTY DAYS** from the date hereof if permitted by applicable law Lender may at its option require immediate payment in full of all sums secured by this Security Instrument  A written statement of any authorized agent of the Secretary dated subsequent to **SIXTY DAYS** from the date hereof declining to insure this Security Instrument and the Note shall be deemed conclusive proof of such ineligibility Notwithstanding the foregoing  this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary

10  **No Deficiency Judgments** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property  Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed  If this Security Instrument is assigned to the Secretary upon demand by the Secretary  Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness including accrued interest owed by Borrower at the time of the assignment

11  **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full  This right applies even after foreclosure proceedings are instituted  To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full  Foreclosure costs and reasonable and customary attorneys  fees and expenses properly associated with the foreclosure

04XA  02/02                                Page 4

*C. H*

proceeding shall be added to the principal balance Upon reinstatement by Borrower this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full However, Lender is not required to permit reinstatement if (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding (ii) reinstatement will preclude foreclosure on different grounds in the future or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12 Lien Status**

(a) **Modification** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a) If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents then Lender shall obtain title evidence at Borrower's expense If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances) Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances Borrower agrees to execute such documents If state law does not permit the original lien status to be extended to future loan advances Borrower will be deemed to have failed to have performed an obligation under this Security Instrument

(b) **Tax Deferral Programs** Borrower shall not participate in a real estate tax deferral program if any liens created by the tax deferral are not subordinate to this Security Instrument

(c) **Prior Liens** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender (b) contests in good faith the lien by or defends against enforcement of the lien in legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument Lender may give Borrower a notice identifying the lien Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice

**13 Relationship to Second Security Instrument.**

(a) Second Security Instrument In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property

(b) Relationship of First and Second Security Instruments Payments made by the Secretary shall not be included in the debt under the Note unless
   (i) This Security Instrument is assigned to the Secretary; or
   (ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary

If the circumstances described in (i) or (ii) occur then all payments by the Secretary including interest on the payments but excluding late charges paid by the Secretary, shall be included in the debt under the Note

(c) Effect on Borrower Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not

   (i) Be required to pay amounts owed under the Note or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note, or

   (ii) Be obligated to pay interest or shared appreciation under the Note at any time whether accrued before or after the payments by the Secretary and whether or not accrued interest has been included in the principal balance under the Note

*C.H.*

(d) **No Duty of the Secretary** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13

14 **Forbearance by Lender Not a Waiver** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy

15. **Successors and Assigns Bound, Joint and Several Liability** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender Borrower may not assign any rights or obligations under this Security Instrument or under the Note except to a trust that meets the requirements of the Secretary Borrower's covenants and agreements shall be joint and several

16 **Notices** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method The notice shall be directed to the Property Address or any other address all Borrowers jointly designate Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16

17 **Governing Law; Severability** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision To this end the provisions of this Security Instrument and the Note are declared to be severable

18 **Borrower's Copy** Borrower shall be given one conformed copy of the Note and this Security Instrument

NON-UNIFORM COVENANTS Borrower and Lender covenant and agree as follows

19 **Assignment of Rents** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents However prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower This assignment of rents constitutes an absolute assignment and not an assignment for additional security only

If Lender gives notice of breach to Borrower (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only to be applied to the sums secured by this Security Instrument, (b) Lender shall be entitled to collect and receive all of the rents of the Property and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19

Lender shall not be required to enter upon take control of or maintain the Property before or after giving notice of breach to Borrower However Lender or a judicially appointed receiver may do so at any time there is a breach Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full

20 **Foreclosure Procedure** If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys fees and costs of title evidence

XB77   02/02                                Page 6

*C.H*

21 Lien Priority The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made regardless of the actual date of any disbursement The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose This lien priority shall apply notwithstanding any State constitution law or regulation except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes

22 Adjustable Rate Feature Under the Note the initial stated interest rate of 2 180 % which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below When the interest rate changes the new adjusted interest rate will be applied to the total outstanding principal balance Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year as made available by the Federal Reserve Board in Statistical Release H 15 (519) ("Index") plus a margin If the Index is no longer available Lender will use as a new Index any index prescribed by the Secretary Lender will give Borrower notice of the new Index

Lender will perform the calculations described below to determine the new adjusted interest rate The interest rate may change on the first day of APRIL 2009 and on ☐ that day of each succeeding year ☒ the first day of each succeeding month ("Change Date") until the loan is repaid in full

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index") Before each Change Date the new interest rate will be calculated by adding a margin to the Current Index The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate")

☐ (Annually Adjusting Variable Rate Feature) The Calculated Interest Rate cannot be more than 2 0% higher or lower than the Existing Interest Rate, nor can it be more than 5 0% higher or lower than the Initial Interest Rate

☒ (Monthly Adjusting Variable Rate Feature) The Calculated Interest Rate will never increase above TWELVE AND 180/1000 percent ( 12 180 %)

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date At any Change Date if the Calculated Interest Rate equals the Existing Interest Rate the interest rate will not change

23 Release Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower Borrower shall pay any recordation costs

24 Compound Interest. At the end of each month accrued interest shall be added to and made a part of the principal balance as a Loan Advance and shall likewise thereafter bear interest

25 Attorneys Fees As used in this Security Instrument and the Note "attorneys' fees" shall include any attorneys fees awarded by an appellate court

XB78  02/02                    Page 7

*C.H*

**27  Riders to this Security Instrument** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Condominium Rider  ☐ Shared Appreciation Rider  ☐ Planned Unit Development Rider
☐ Other (Specify)

BY SIGNING BELOW Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it

Witnesses

_Cleveland Hart_ (Seal) -Borrower
**CLEVELAND HART**

_____ (Seal) -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

[Space Below This Line For Acknowledgment]

**STATE OF** Florida                              ,       **COUNTY SS** Miami-Dade

The foregoing instrument was acknowledged before me this 26th day of January 2009

by Cleveland Hart

who is personally known to me or; who has produced  A Florida Driver's License
as identification and who did (did not) take an oath

My Commission Expires

MARISOL FERNANDEZ
MY COMMISSION # DD 416513
EXPIRES April 7 2009
Bonded Thru Budget Notary Services

Notary Public _Marisol Fernandez_

Name   MARISOL FERNANDEZ

XB79  08/97                    Page 8

Cleveland Hart

## EXHIBIT A

LOT 15 BLOCK 1 OF RAINBOW GARDENS ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 43, PAGE 55 OF THE PUBLIC RECORDS OF MIAMI DADE COUNTY FLORIDA

COMMONLY KNOWN AS 1641 NW 155TH STREET OPA LOCKA, FL 33054
TAX ID# 3421140010150

BEING THE SAME PROPERTY CONVEYED TO CLEVELAND HART AND PAULINE HART, BY DEED DATED 6/9/1987 AND RECORDED 6/16/1987 IN DEED BOOK VOLUME 13314 PAGE 15 IN MIAMI DADE COUNTY FLORIDA

